UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SECURITIES AND EXCHANGE                                     :
COMMISSION,                                                 :
                                                            :
                              Plaintiff,                    :         16-CV-6964 (VSB)
                                                            :
              - against -                                   :         **MEMORANDUM & OPINION**
                                                            :
CONTRARIAN PRESS, LLC, et al.,                              :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/2017

Appearances:

Haimavathi V. Marlier
Alexander J. Janghorbani
Tejal D. Shah
Andrew M. Calamari
Securities and Exchange Commission
New York, New York
*Counsel for Plaintiff*

Michael J. Quinn
Vedder Price P.C.
Los Angeles, California

Justin H. Roeber
K&L Gates LLP
New York, New York
*Counsel for Defendants Contrarian Press, LLC and Scott S. Fraser*

Thomas O. Gorman
Kimberly Frumkin
Dorsey & Whitney, LLP
Washington, D.C.
*Counsel for Defendant Nathan Yeung*


VERNON S. BRODERICK, United States District Judge:

  The Securities and Exchange Commission ("SEC" or "Plaintiff") brings this action

against Contrarian Press, LLC, Scott S. Fraser, and Nathan Yeung (collectively, "Defendants"), alleging that Defendants violated Section 17(b) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(b), and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, and that Defendants Fraser and Yeung aided and abetted those violations, by, among other things, concealing from the investing public Fraser's interest in penny stock issuer Empowered Products, Inc. ("EMPO") with respect to three separate promotional campaigns touting EMPO. (*See* Compl.)[1] Before me is the motion to dismiss for improper venue or, in the alternative, to transfer venue to the Southern District of California by Defendants Fraser and Contrarian Press (the "moving Defendants").[2] (Doc. 37.) Because I find that there are sufficient facts to support venue in the Southern District of New York, the moving Defendants' motion is DENIED.

## I. The Appropriateness of Venue

Defendant Fraser is the President, Chief Executive Officer, Chairman of the Board, and shareholder of EMPO, and the founder, owner, and President of Contrarian Press, LLC ("Contrarian Press"), a publishing company. (Compl. ¶¶ 14, 18.) Fraser also wrote and published stock-picking newsletters. (*Id*. ¶ 2.)

On or about July 1, 2011, EMPO and Contrarian Press entered into an agreement under which EMPO paid thousands of dollars per month to Contrarian Press, in part, to promote its business and stock. (*Id*. ¶¶ 3, 24.) "Fraser and Contrarian Press hired third parties, including

---

[1] "Compl." refers to the Complaint filed in this action on September 6, 2016. (Doc. 1.) The facts referenced in this decision are taken from the Complaint. My references to such factual allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] By letter dated March 13, 2017, Defendant Yeung, who had not been served as of the conference addressing this motion to dismiss, requested clarification as to whether he should respond to the Complaint, given the pending motion. (Doc. 43.) In response, I adjourned Defendant Yeung's time to respond to the Complaint until a ruling on this motion to dismiss. (Doc. 44.) Defendant Yeung has not taken a position on the pending motion.

2

Yeung, to arrange the promotion of EMPO and its stock." (*Id.* ¶ 5.) As part of Yeung's efforts to promote EMPO, he is alleged to have worked "under the alias 'Mason Zhang' and through a front company, 'Crown Pacifica Media Services.'" (*Id.*) The promotional materials prepared and/or used by Yeung as part of the promotional campaign "did not disclose Fraser's and Contrarian Press's involvement in the campaign and the fact that EMPO was paying Contrarian Press to promote its business and stock." (*Id.*)

Plaintiff alleges that venue is proper here because "[c]ertain of the transactions, acts, practices, and courses of business constituting the violations alleged . . . occurred within the Southern District of New York." (Compl. ¶ 12.) Such transactions, events and activities include, among other things: (1) "investors who purchased during the relevant promotional campaigns," (2) "EMPO's stock [that] was at all relevant times quoted on the Manhattan-based OTC Bulletin Board," (3) "certain of the stock promoters hired by Defendants to distribute promotional materials at issue in this case [who] were based in Manhattan," and (4) "payments [that] were made to at least one promoter through an account in New York City." (*Id.*)

### A. *Applicable Law*

Under the Securities Act, venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein." 15 U.S.C. § 77v(a). Similarly, under the Exchange Act, venue is proper if the suit is brought in the district "wherein any act or transaction constituting the violation occurred . . . or in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa.

With respect to the Exchange Act, "any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue." *Sec. & Exch. Comm'n*

3

*v. Rust*, No. 16 Civ. 3573 (ER), 2017 WL 239381, at *1 (S.D.N.Y. Jan. 17, 2017) (quoting *Greenwood Partners v. New Frontier Media Inc.*, No. 99 Civ. 9099 WK, 2000 WL 278086, at *6 (S.D.N.Y. Mar. 14, 2000)). "The act or transaction committed within the district need not constitute the core of the violation, but should be an important step in the fraudulent scheme." *Id.* (quoting *Greenwood*, 2000 WL 278086, at *6). Therefore, "acts such as a transfer agent merely mailing dividends from New York City, press releases being sent *into* a district, and making a phone call or mailing into a district have all been held sufficient to confer venue." *Id.* (quoting *Greenwood*, 2000 WL 278086, at *6). "If there is proper venue under [either the Securities or Exchange Acts], venue is also proper for a claim arising under [the other]." *Ahrens v. Cti Biopharma Corp.*, No. 16 Civ. 1044 (PAE), 2016 WL 2932170, at *3 n.3 (S.D.N.Y. May 19, 2016) (alteration in original) (quoting *Zorn v. Anderson,* 263 F. Supp. 745, 747 (S.D.N.Y. 1966).

**B.** *Application*

Plaintiff's allegations as to venue rest on various transactions, acts, and courses of business occurring in this District that were material to, facilitated, and/or formed a part of the violations alleged, as described in greater detail above. More specifically, Plaintiff alleges that venue is proper in this District because: (1) Fraser authored false or misleading newsletters and articles promoting EMPO stock; (2) Fraser used his publishing company, Contrarian Press, to transmit those newsletters and articles to customers and subscribers, including some in this District; (3) Fraser hired Yeung (now a co-defendant), and another associate to retain stock promotion companies—including at least four that were based in this District—to transmit false and misleading EMPO promotions to subscribers, including subscribers in this District; and (4)

4

at least one stock promoter was paid through a Manhattan-based account. (Pl.'s Opp. 1, 5, 6.)[3] Plaintiff also alleges that the Manhattan-based OTC Bulletin Board and OTC Link were "key instruments in the fraud," and that investors in this District purchased EMPO shares after the promotions. (*Id.* at 1–2.) These facts were clearly important steps in the alleged fraud. As such, they suffice to establish venue. *See, e.g.*, *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 267 (S.D.N.Y. 1988) (noting that "'any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue'" and finding phone calls to district placing orders for stock were sufficient to establish venue).[4]

## II. Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). The party seeking transfer bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).

To determine whether transfer is warranted, a district court engages in a two-step inquiry.

---

[3] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Improper Venue or, Alternatively, to Transfer Venue. (Doc. 40.)

[4] As support for their motion, Defendants cite *Leema Enterprises, Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983). However, *Leema* is easily distinguishable and, in fact, supports a finding that venue is appropriate here. In *Leema*, the only act of any relevance alleged to have occurred in this District was Leema's wire transfer to a bank's New York correspondent account, the act was not material to the principal allegation of misconduct, and none of the alleged misconduct occurred in this District. In contrast, here, the facts demonstrate multiple connections to this District that are material in connection with the alleged fraud. *See id.* at 1537 ("The act or transaction committed within the district need not constitute the core of the violation . . . but should be an important step, . . . or at least be more than an immaterial part of the alleged violations." (citations and quotation marks omitted)).

5

*In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006). "First, the court must determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must evaluate . . . several factors relating to the convenience of transfer and the interests of justice." *Id*. (internal quotation marks and citations omitted). These factors include:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Ahrens*, 2016 WL 2932170, at *2 (quoting *Robertson v. Cartinhour*, No. 10 Civ. 8442 (LTS) (HBP), 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011)).

The parties agree that this action could have been brought in the Southern District of California. (*See* Pl.'s Opp. 15 n.13.) As a result, the only remaining issue is whether a balancing of the relevant factors supports transfer. Although certain of the factors do favor the moving Defendants' preferred forum, I find that on balance, the interests of justice and convenience favor the Plaintiff's choice. Aside from the deference generally accorded to Plaintiff's choice of venue, *see Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001) (plaintiff's choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer" (citing *Warrick v. Gen. Elec. Co*., 70 F.3d 736, 741 (2d Cir. 1995)))), I note that (1) the majority of witnesses are either located outside of California or in another country, (2) Plaintiff's summary witness, as well as two non-party witnesses, are located in this District, and (3) two other non-party witnesses are located in New

York State. (Shah Decl. ¶ 16.)[5]  Moreover, the SEC's New York Regional Office investigated Defendants' fraud, initiated this litigation, and most of the attorneys from that office who investigated the fraud will also try the case.  In contrast, Defendants' choice of venue—the Southern District of California—does not have an SEC office, and of Plaintiff's more important witnesses, only Fraser—a party—is listed as being located in San Diego.[6]  (*Id.*)  *See DiPizio v. Empire State Dev. Corp.*, No. 1:15-cv-5339–GHW, 2015 WL 5824704, at *5 (S.D.N.Y. Oct. 5, 2015) (Courts "weigh[ ] more heavily the convenience of non-party witnesses than party witnesses" (internal quotation marks omitted)).  Furthermore, Yeung, the other individual Defendant, resides in Canada.  Upon considering these facts, I deny the moving Defendants' motion to transfer.

## III.  Conclusion

For the reasons stated above, the moving Defendants' motion to dismiss for improper venue or, in the alternative, to transfer venue to the Southern District of California, is DENIED.  The Clerk of Court is directed to terminate the open motion at Document 37.

SO ORDERED.

Dated: September 29, 2017
    New York, New York

Vernon S. Broderick
United States District Judge

---

[5] "Shah Decl." refers to the Declaration of Tejal D. Shah submitted in opposition to the moving Defendants' motion to dismiss, filed on March 10, 2017.  (Doc. 41.)

[6] Plaintiff lists three other potential witnesses—all associates of Fraser and lower down in order of importance on Plaintiff's witness list—who are located in San Diego.  (Shah Decl. ¶ 16.)

7