

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
200 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10281-1022

HAIMAVATHI V. MARLIER
(212) 336-1055
MARLIERH@SEC.GOV

June 20, 2019

<u>Via ECF</u>

The Honorable Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

  Re:  <u>*SEC v. Contrarian Press, LLC, et al.*, 16-cv-06964 (VSB) (S.D.N.Y.)</u>

Dear Judge Broderick:

  The undersigned counsel represent the plaintiff United States Securities and Exchange Commission ("SEC") and defendants Contrarian Press, LLC ("Contrarian Press") and Scott S. Fraser ("Fraser") (collectively, "Defendants"). We submit this letter jointly, under Your Honor's Individual Practices in Civil Cases 2(C) and the Order and Notice of Initial Conference dated June 3, 2019 (Dkt. No. 92), in advance of the initial pretrial conference scheduled for June 27, 2019.

**1.  Brief Description of the Case**

  A. <u>The SEC's Description of the Case</u>

  The SEC has alleged that Fraser, the CEO of penny stock issuer Empowered Products, Inc. ("EMPO"), concealed from investors his involvement with and funding of at least three separate promotional campaigns touting EMPO, his own company. Fraser is the owner and controller of Contrarian Press, a stock publishing company. In July 2011, EMPO and Contrarian Press entered into an Investor Relations Agreement whereby Contrarian Press agreed to serve as a consultant to EMPO to, among other things, attract new shareholders. EMPO paid Contrarian Press around $1 million from 2011 to 2014 under this agreement.

  First, in September to October 2011, Fraser used Contrarian Press to tout EMPO in promotional newsletters that Fraser, himself, authored. In order to create the false and materially misleading appearance of objectivity, Fraser used a pseudonym and referred to himself in the third person in the Contrarian Press newsletters promoting EMPO. EMPO trading volumes substantially increased during the first promotional period.

During the second promotion in May 2012, Defendants surreptitiously promoted EMPO by arranging for Fraser's associate, who was also EMPO's vice president of sales and marketing, to organize the promotion using two other stock promotion companies. Fraser saw and approved the promotional newsletter before it was distributed to the investing public and another Fraser long-time associate, whose company had close connections to Fraser and who had provided seed capital to EMPO when it was founded, funded the promotion. Again, EMPO's trading volumes increased substantially during the promotional period.

During the third promotion, Defendants hired Defendant Nathan Yeung ("Yeung")[1] to undertake another surreptitious EMPO promotion. Yeung used a pseudonym and was given a Contrarian Press email address, which he used to communicate with stock promoters. Although Yeung initially asked the stock promoters to issue their invoices to Contrarian Press, Fraser had his personal assistant create a front company so that it would appear that a company other than Contrarian Press was organizing the promotion. Yeung switched to a gmail email address and asked the stock promoters to re-issue their invoices in the front company's name. Fraser's same long-time associate that funded the second promotion also funded the third one. Again, EMPO's trading volumes increased substantially during the promotional period.

By engaging in this conduct, the SEC has alleged that Defendants violated Section 17(b) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"); that Fraser aided and abetted Contrarian Press's violations of the foregoing; and that Fraser was a control person of Contrarian Press and, under Exchange Act 20(a), is jointly and severally liable with Contrarian Press for its violations.

B. Defendants' Description of the Case

Defendants deny all material allegations in the Amended Complaint and assert fourteen affirmative defenses. Defendants assert that the SEC cannot establish primary liability for a violation of Rule 10b-5(a) or (c) as to the Second and Third Promotional Campaigns (as defined in the Amended Complaint) because neither Mr. Fraser nor Contrarian Press made, had ultimate authority over, or disseminated any statements and the fraud alleged relates exclusively to the failure to disclose their alleged involvement. Because Mr. Fraser is only alleged to have aided and abetted Contrarian Press, which cannot be a primary violator as noted above, the SEC also cannot establish secondary liability as to those two campaigns. The newsletters comprising the First Promotional Campaign were distributed only to Contrarian Press' own internal mailing list and the alleged misrepresentations were not material. Finally, under the plain unambiguous language of the July 2011 agreement between EMPO and Contrarian Press, no money was ever paid to Contrarian Press for any of the alleged promotional campaigns.

**2. Jurisdiction and Venue**

The Court has jurisdiction over this securities enforcement action pursuant to Securities and Exchange Acts. The parties refer the Court to its Memorandum & Opinion dated September

---

[1] The SEC reached a settlement agreement in principle with Yeung, which is subject to review and approval or rejection by the SEC Commissioners. Accordingly, on June 3, 2019, this Court granted a 60-day extension for Yeung to answer the SEC's Amended Complaint.

29, 2017 (Dkt. No. 50), holding that venue is supported in the Southern District of New York. For the reasons set forth in their Memorandum of Law in support of Motion to Dismiss based on Improper Forum or, in the alternative, Motion to Transfer Venue (Dkt. No. 38), Defendants continue to maintain that venue is improper in this Court because the case has no connection to New York except being the location of Plaintiff's counsel, and Defendants respectfully reserve all rights with respect to this issue.

### 3. Contemplated Motions

The parties both anticipate moving for summary judgment after the close of discovery.

### 4. Description of Discovery

The parties have not engaged in an exchange of discovery and do not need discovery to engage in meaningful settlement negotiations. Defendants note that the SEC conducted a multi-year nonpublic investigation, including through the use of its administrative subpoena powers, and obtained documents, testimony and other information from witnesses in advance of filing this litigation. Defendants have not had access to any of the investigative materials other than those they provided.

### 5. Prior Settlement Discussions

The parties discussed settlement in August 2016 before the SEC filed its complaint but were unable to reach an agreement. The parties recently reopened settlement discussions, but have not reached an agreement. The parties intend to continue negotiating, but at this point, the prospect of settlement is unclear.

### 6. Estimated Length of Trial

The parties anticipate that the trial will last 8 days, with 4 days for each side.

### 7. Other Issues

The parties are not aware of other issues that may assist the Court in advancing the case.

*   *   *

We look forward to discussing these issues at the upcoming initial pretrial conference.

    Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By:   */s/ Haimavathi V. Marlier*
      Haimavathi V. Marlier
      Tejal D. Shah
      Securities and Exchange Commission
      200 Vesey Street, Suite 400
      New York, New York 10281
      (212) 336-1055 (Marlier)
      marlierh@sec.gov

VEDDER PRICE P.C.

By:   */s/ Michael J. Quinn*
      Michael J. Quinn
      Joshua A. Dunn
      Vedder Price P.C.
      1633 Broadway, 31st Floor
      New York, NY 10019
      mquinn@vedderprice.com
      jdunn@vedderprice.com
      (212) 407-7700