

| | |
|---|---|
| August 20, 2019 | Chicago<br>New York<br>Washington, DC<br>London<br>San Francisco<br>Los Angeles<br>Singapore<br>vedderprice.com<br><br>Michael Quinn<br>Shareholder<br>+1 424 204 7734<br>mquinn@vedderprice.com |

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   SEC v. Contrarian Press, LLC, et al., 16-CV-06964

Dear Judge Broderick:

The undersigned counsel represent defendants Contrarian Press, LLC ("Contrarian Press") and Scott S. Fraser ("Fraser") (collectively, "Defendants") and plaintiff United States Securities and Exchange Commission ("SEC" or "Plaintiff" and, together with Defendants, the "Parties"). The Parties submit this letter jointly, pursuant to Rule No. 3 of Your Honor's Individual Rules & Practices in Civil Cases, regarding a discovery dispute they have been unable to resolve on their own.

The present dispute involves the SEC's responses to Defendant Fraser's Requests for Production of Documents (Set One) to Plaintiff ("Responses"), specifically, its response to Request No. 12, which seeks the investigative staff's notes and/or summaries of any interviews conducted as part of the SEC's investigation.[1] The SEC has refused to produce certain documents responsive to Request No. 12 on the basis that the requested notes and/or summaries are protected from disclosure by the attorney work product doctrine.[2]

The parties have met their obligations under Fed. R. Civ. P. 37(a)(1) to meet and confer regarding these issues through their letters dated July 30, 2019 and August 2, 2019, as well conference calls on Friday, August 1, 2019 and Monday, August 19, 2019 involving Tejal Shah and Haimavathi Marlier for the SEC and Michael Quinn and Joshua Dunn for Defendants.

<u>Defendants' Position</u>:

---

[1] The request in its entirety seeks "[a]ny and all DOCUMENTS reflecting any notes and/or summaries of any interview YOU conducted, whether formal or informal, of any PERSON in connection with the INVESTIGATION." A copy of the Responses, which also contain Fraser's Requests, is attached hereto as Exhibit A.

[2] After conferring with Defendants, the SEC advised Defendants that it will produce three witness interview summaries subject to a non-waiver agreement in order to avoid unnecessary disputes and will provide a revised privilege log. The Parties agreed that this limited production does not constitute a waiver of the SEC's assertion of any protection or privilege as to any other withheld documents.

1925 Century Park East, Suite 1900  |  Los Angeles, California 90067  |  T +1 424 204 7700  |  F +1 424 204 7702

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, and Vedder Price Pte. Ltd., which operates in Singapore.

The Honorable Vernon S. Broderick
August 20, 2019
Page 2

In connection with its investigative duties, the SEC customarily takes on-the-record testimony from witnesses and defendants are provided with transcripts in any subsequent litigation so they know exactly what witnesses have previously told SEC investigators and can determine if statements made during litigation are consistent or not.  Here, SEC investigators chose to interview Defendant Yeung off the record and are now seeking to deprive Defendants of the ability to confirm if statements made during an upcoming deposition are consistent or not.  The issue is more critical given that Yeung is a Canadian resident and has advised the Court he is settling and will thus be unavailable to testify at trial—i.e., the deposition will likely be Defendants' one and only opportunity to cross-examine Yeung.

The notes from the SEC's investigative interviews of various witnesses, including defendant Nathan Yeung,[3] do not qualify for attorney work product protection for several reasons.  First, the notes were not prepared "in anticipation of litigation or for trial," as required for protection under Federal Rule of Civil Procedure 26(b)(3)(A).  Rule 26(b)(3) "applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation."  *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 304 (S.D.N.Y. 1991); *SEC v. Thrasher*, No. 92 Civ. 6987, 1995 U.S. Dist. LEXIS 1355, at *7 (S.D.N.Y. Feb. 7, 1995).  Here, because the SEC interviewed Mr. Yeung and several other witnesses as part of its fact-gathering investigative duties authorized by statute, and necessarily before it had determined whether there had been any violations of the securities laws that would warrant this litigation, the notes from those interviews do not constitute protectable work product.  *See Thrasher*, 1995 U.S. Dist. LEXIS 1355 at *10 (rejecting notion that notes of witness interviews created in the course of a fact-gathering investigation, and prior to a determination to initiate litigation, are automatically work product).

The SEC's anticipated reliance on *SEC v. Treadway*, 229 F.R.D. 454 (S.D.N.Y. 2005) and *SEC v. Stanard*, No. 06-cv-7736 (GEL), 2007 U.S. Dist. LEXIS 46432 (S.D.N.Y. June 26, 2007) on this point is misplaced.  In both cases, the court's determination that the interview notes at issue were created in anticipation of litigation—thus entitling them to work product protection—was predicated, at least in part, upon the "close proximity of the dates on which the notes were prepared to the date on which the instant action was filed . . ."  *Treadway,* 229 F.R.D at 455-56; *Stanard*, 2007 U.S. Dist. LEXIS 46432 at *4.  Here, according to the SEC's privilege log, Mr. Yeung's interview took place on May 19, 2016, nearly four months before it filed its initial complaint in this matter.

Second, SEC staff investigators were not acting in their capacities as attorneys during the investigation.  Rather, they were acting as investigators, specifically deputized as *officers* (*not* attorneys) of the Commission by the formal Order of Investigation, and tasked with gathering facts and evidence, in much the same way as police detectives.  To the extent any members of the investigative team happen to have been attorneys, which is by no means required by statute or the Commission's rules of practice, that fact does not alter the character of their investigation duties, nor does it automatically convert the facts and evidence they gathered into attorney work product.  *See, e.g., Georgia-Pacific Corp. v. GAF Mfg. Corp.*,

---

[3] This dispute concerns the SEC's notes and/or summaries from its interviews of all witnesses in connection with the SEC's investigation; however, the need for the notes from the SEC's interview with defendant Nathan Yeung is particularly acute and urgent in light of the SEC's recent subpoena for Mr. Yeung's deposition on September 16, 2019.  While the SEC has recently informed Defendants that Mr. Yeung's deposition will not proceed on the noticed date, it has also stated it is continuing to discuss scheduling with Mr. Yeung's counsel, and Defendants have every reason to believe that it will proceed as soon as possible subject to counsel's availability.

No. 93-5125, 1996 U.S. Dist. LEXIS 671, at *11-12 (S.D.N.Y. Jan. 25, 1996) (rejecting assertion of privilege where attorney "was not exercising a lawyer's traditional function").

Third, the attorney work product doctrine does not protect from disclosure the underlying facts known to a party or his counsel, even if acquired in anticipation of litigation. *See Thrasher*, 1995 U.S. Dist. LEXIS 1355 at *7. To the extent the withheld notes consist of mere summaries of what a party or witness stated to an attorney and do not reflect the mental impressions or processes of the Commission's attorneys, these materials should be treated as, at best, "factual work product," and produced in accordance with Rule 26(b)(3). *Id*. at *19-20; *see also In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982) (declining to extend work product protection to notes "recited in a paraphrased, abbreviated form," including statements of the interviewee related to relevant events, and rejecting the idea that inferences could be drawn about an attorney's "legal theory" merely from his questions).

Even if *arguendo* some portion of the notes could conceivably be considered attorney work product, Defendants have a substantial need for the notes, which they cannot obtain through any other means, in order to prepare their defense. Fed. R. Civ. P. 26(b)(3)(A)(ii) (work product protection can be overcome if requesting party shows it has a "substantial need" for the materials and "cannot, without undue hardship, obtain their substantial equivalent by other means"). Regarding substantial need, Defendants are entitled to know in preparing their defense whether Mr. Yeung's upcoming deposition testimony is consistent with his prior statements to the SEC. *See Thrasher*, 1995 U.S. Dist. LEXIS 1355 at *26 (defendants had substantial need to learn what witnesses previously told the Commission).

Moreover, Defendants do not have the ability to obtain the substantial equivalent of the requested notes by other means and without undue hardship. Mr. Yeung is a resident of Canada and recently advised the Court that he has reached a settlement with the SEC. As a result, it is very likely that Mr. Yeung will be deemed unavailable for trial such that the SEC will seek to use his deposition testimony at trial, and Defendants will not have another opportunity to examine him. All that a party needs to show to satisfy the "hardship" prong is that it is "likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from the factual work product of the obtaining party." *Id.* ("hardship" requirement satisfied where a witness' whereabouts are unknown or where he fails to respond or cooperate).

On this point, *Treadway* is, once again, inapposite. There, the court, in extending work product protection to the documents in question, expressly noted that "[d]efendants are free to question each of the witnesses at their depositions, ***and at trial***, concerning the witnesses' statements to the SEC at various proffer sessions." *Id.* at 456 (emphasis added). For the reasons noted above, it is clear that Defendants will have no such freedom, at least with respect to Mr. Yeung, since they have been given no assurances that he will, in fact, be available to testify at trial.

For the above reasons, the requested notes do not qualify for work product protection and should be produced in their entirety.

Plaintiff's Position:

The SEC has withheld seventeen interview memoranda as protected from disclosure by the attorney work product doctrine and has included a description of these documents on a privilege log. This includes a memorandum summarizing a May 19, 2016 interview of Mr. Yeung by SEC attorneys working on the

investigation that led to the instant litigation. Joseph Darragh, a Program Analyst in the SEC's Division of Enforcement, prepared the memorandum concerning Mr. Yeung at the direction of attorneys during the course of the SEC's Division of Enforcement's investigation into whether Defendants violated the federal securities laws. The withheld memoranda are protected from disclosure because the SEC prepared these documents in anticipation of litigation and Defendants do not have a substantial need for these documents because they can obtain the substantial equivalent via civil discovery.

FED. R. CIV. P. 26(b)(3) states that, subject to limited exceptions, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." "[S]uch material is to be protected unless a highly persuasive showing is made." *U.S. v. Adlman*, 134 F.3d 1194, 1204 (2d Cir. 1998). Materials protected by the attorney work product doctrine may be discovered only if the party seeking disclosure "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(ii).

The SEC staff prepared all of the withheld interview notes and memoranda in anticipation of litigation. The phrase "in anticipation of litigation" applies to documents "prepared 'because of' existing or expected litigation[.]"*Adlman*, 134 F.3d at 1198. SEC Division of Enforcement attorneys conducted witness interviews and prepared, or directed Mr. Darragh to prepare, the withheld documents in order to gather information that would enable them to advise the SEC Commissioners as to whether the SEC should file the instant litigation against Defendants. The withheld documents contain attorney mental impressions and reflect attorney analyses of the facts relevant to legal theories.[4] *See SEC v. Nadel*, No. cv-11-215(WFK)(AKT), 2012 WL 1268297, at *7 (E.D.N.Y. Apr. 16, 2012) (citing *SEC v. Sentinel Mgmt. Group, Inc.*, No. 07-cv-4684, 2019 WL 4977220 (N.D. Ill. Dec. 2, 2010) (production of interview notes reveals an attorney's mental process because the attorney exercises judgment in determining which witness to interview, subject areas to cover and in what order, how much time to devote to particular subjects, and what to write down). As to timing, and although the time period is not necessarily dispositive, fourteen of the witness interviews were conducted between March 2016 and September 2016, or within six months of the filing of this litigation. Indeed, the SEC issued Wells Notices to Defendants in July 2016.[5] *See Nadel*, 2012 WL 1268297, at *6 (finding that the SEC met its burden of demonstrating that withheld interview notes were prepared in anticipation of litigation where the interviews took place within seven months of filing and contemporaneous with the issuance of Wells notices). Finally, the withheld documents are not substantially verbatim transcripts that could be subject to discovery as witness statements. These documents fall squarely within the protections of the work product doctrine. *See SEC v. Treadway*, 229 F.R.D. 454, 455 (S.D.N.Y. 2005) (witness interview notes were not discoverable because they reflected the "thought processes of counsel" and were "not substantially verbatim transcripts that would be subject

---

[4] Although Mr. Darragh of the SEC is not an attorney, he was familiar with the legal strategy of the investigation at the time he prepared the withheld memoranda and understood what information was relevant and should be recorded based on his discussions with attorneys. *See SEC v. Nadel*, No. cv-11-215(WFK)(AKT), 2012 WL 1268297, at *8 (E.D.N.Y. Apr. 16, 2012) (protecting from disclosure notes taken by non-attorneys); *SEC v. Strauss*, No. 09-cv-4150(RMB)(HBP), 2009 WL 3459204, at *6 (S.D.N.Y. Oct. 28, 2009) (similar).

[5] The three withheld documents dated 2015 were created by attorneys in anticipation of litigation and are clearly work product. *See SEC v. Cavanagh*, No. 98-cv-1818(DLC), 1998 WL 132842, at *2 (S.D.N.Y. Mar. 23, 1998) (withheld attorney notes of witness interviews "are classic work product" under the Second Circuit's standard re-affirmed in *U.S. v. Adlman*).

to discovery as witness statements"); *SEC v. Stanard*, No. 06-cv-7736(GEL), 2007 WL 1834709, at *2 (S.D.N.Y. June 26, 2007) (SEC interviews were conducted in order to determine whether to initiate litigation and interview notes were protected work product); *SEC v. NIR Group, LLC*, 283 F.R.D. 127, 133 (E.D.N.Y. 2012) (protecting notes and memoranda of attorney-conducted interviews, including those prepared by non-attorneys, from disclosure).

Fraser and Contrarian Press will not be able to overcome the SEC's assertion of attorney work product protection over the withheld documents because they do not have a substantial need for these materials. Indeed, Fraser and Contrarian Press can obtain the substantial equivalent of Mr. Yeung's or any other witness's statements to the SEC by other means, including via written discovery, informal inquiries, and during his deposition. *See Treadway*, 229 F.R.D. at 456 (defendants failed to show a substantial need for SEC interview notes where they were "free to question each of the witnesses at their depositions . . . concerning the witnesses' statements to the SEC at various proffer sessions"); *NIR Group*, 283 F.R.D. at 135-36 ("Defendants have no shortage of options" for gathering information from witnesses interviewed by the SEC). For this and other reasons, Defendants' reliance on *SEC v. Thrasher*, No. 92-cv-6987-JFK, 1995 WL 46681 (S.D.N.Y. Feb. 7, 1995) is inapposite. In *Thrasher*, the court ordered production of SEC witness interview memoranda because the witnesses at issue were unavailable for depositions, either because they were dead or invoked their Fifth Amendment rights.[6] *Id*. at *1, 7-8. Moreover, *Thrasher* involved insider trading allegations based on information from the unavailable tippers and tippees and, therefore, the court found that the only "realistic avenue" for defendants to learn the basis of the allegations against them was through the SEC's notes. *Id*. at *1. By contrast, the SEC is trying to schedule Mr. Yeung's deposition and Defendants can ask him—at the deposition or via other means—about his conversations with the SEC, it cannot be said that Mr. Yeung alone possesses information regarding the basis of the SEC's allegations against Fraser and Contrarian Press, and Defendants can seek formal or informal discovery from any other witness.

For the above reasons, the withheld witness interview memoranda are protected from disclosure by the attorney work product doctrine.

        Respectfully submitted,

        VEDDER PRICE P.C.

By:   */s/ Michael J. Quinn*
      Michael J. Quinn
      Joshua A. Dunn
      Vedder Price P.C.
      1633 Broadway, 31st Floor
      New York, NY 10019
      mquinn@vedderprice.com
      jdunn@vedderprice.com
      (212) 407-7700

SECURITIES AND EXCHANGE COMMISSION

---

[6] Unlike here, the court in *Thrasher* also determined that the SEC did not show that it was in anticipation of litigation, which further distinguishes this case. *See* 1995 WL 46681, at *4.

The Honorable Vernon S. Broderick
August 20, 2019
Page 6

                        By:    */s/ Haimavathi V. Marlier*
                                Haimavathi V. Marlier
                                Tejal D. Shah
                                Securities and Exchange Commission
                                200 Vesey Street, Suite 400
                                New York, New York 10281
                                (212) 336-1055 (Marlier)
                                marlierh@sec.gov

cc:    Joshua A. Dunn
       Marc Powers
       Tejal Shah