```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,        :
                                           :
                          Plaintiff,       :     16 Civ. 6964 (VSB)
                                           :
         - against -                       :     ECF Case
                                           :
CONTRARIAN PRESS, LLC, et al.              :
                                           :
                          Defendants,      :
                                           :
------------------------------------------------------------------x
```

## [PROPOSED] REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY)

The United States District Court for the Southern District of New York presents its compliments to the Supreme Court of British Columbia in Vancouver, in the Province of British Columbia, Canada, and requests judicial assistance to compel the attendance of a witness at an oral deposition and the production of documents to be used in a civil proceeding before this Court in the above-captioned matter. This Court requests the assistance described herein as necessary in the interests of justice.

### I.      Summary of Action

The United States Securities and Exchange Commission ("SEC") filed this action on September 6, 2016, in the United States District Court for the Southern District of New York, against Contrarian Press, LLC ("Contrarian Press"), Scott Fraser ("Fraser") and Nathan Yeung ("Yeung") (collectively the "Defendants"). The SEC filed an Amended Complaint on January 22, 2018. The SEC alleges that the Defendants made materially false statements and omissions in connection with the sale of securities in the United States, in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; that Defendants published or circulated articles describing a

1

security, in exchange for consideration received from an issuer, without fully disclosing the receipt of such consideration and the amount thereof, in violation of Section 17(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(b); that Fraser and Yeung aided and abetted Contrarian Press's violations of the foregoing statutes; and that Fraser was a control person of Contrarian Press and therefore is jointly and severally liable to the same extent as Contrarian Press for its violations.

The SEC alleges that Fraser—the CEO of the penny stock issuer Empowered Products, Inc. ("EMPO") and owner of publishing company Contrarian Press—concealed from the investing public his and EMPO's involvement with, and funding of, at least three separate promotional campaigns touting EMPO.  The first campaign took place in September-October 2011; the second campaign took place in May 2012; and the third campaign ran from October through mid-November 2012.  Before the promotions began, Fraser caused EMPO and Contrarian Press to enter into an investor relations agreement whereby EMPO paid Contrarian Press to promote EMPO stock.  In each of the campaigns, Fraser used Contrarian Press and other stock promotional companies to promote EMPO's stock without disclosing in the promotions: (1) the relationship between EMPO and Contrarian Press; or (2) that EMPO was, directly and indirectly, paying for the stock promotional campaigns.

The SEC also alleges that when EMPO became a public company in June 2011, it entered into a Subscription Agreement with New Kaiser Limited, a Hong-Kong based entity associated with Fraser's Hong Kong and Vancouver-based business associate, Joe Cheung ("Cheung"), pursuant to which New Kaiser received 2 million EMPO shares in exchange for $1.5 million and the retirement of a $500,000 note.  Cheung subsequently provided funding for the May 2012 and October-November 2012 EMPO promotional campaigns, and introduced Fraser to Yeung in

August 2012.  The SEC alleges that Fraser and Contrarian Press then hired Yeung to arrange EMPO's third promotional campaign.  In connection with his work, Yeung used the alias "Mason Zhang" to conceal his involvement.  Yeung communicated with stock promoters using the e-mail address mz@contrarianpress.com, corresponding to his pseudonym, and provided the stock promoters with a link to a website from which they downloaded EMPO promotions that they, in turn, circulated to over 3 million prospective investors.

The Commission seeks a judgment from the Court: (a) enjoining Defendants from engaging in future violations of the relevant provisions of the federal securities laws; (b) ordering Defendants to disgorge, with prejudgment interest, their ill-gotten gains; (c) ordering Defendants to pay a civil money penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3); (d) prohibiting Fraser from acting as an officer or director of any public company, pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(e) and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2); and (e) prohibiting Fraser and Yeung from participating in any offering of penny stock, pursuant to Section 20(g) of the Securities Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. § 78u(d)(6).

On March 13, 2019, this Court denied Defendants' motions to dismiss the Commission's Amended Complaint.  Contrarian Press and Fraser answered the Amended Complaint on March 27, 2019 and filed an amended answer on April 17, 2019.  The Commission and Yeung agreed to a settlement and, on September 4, 2019, this Court entered a Final Judgment by consent against Yeung, resolving all of the SEC's claims against him. The Commission is currently in discovery with Contrarian Press and Fraser.  On June 27, 2019, this Court issued a case-management order requiring the parties to complete discovery by May 29, 2020.

The individual named in this Request, Almir Ramic ("Ramic"), is a resident Abbotsford, in the Province of British Columbia, Canada, and has within his possession, custody, or control evidence that is highly relevant to the parties' claims and defenses.

## II.     **Assistance Required**

The assistance of the British Columbia Supreme Court in Vancouver, British Columbia, Canada, is requested because the witness and documents described below are relevant to discovery and necessary for the trial of this case.

The evidence sought from Ramic, who resides and works in the province of British Columbia, and the documents requested from this witness are relevant not only to discovery in this case, but are also necessary for use at the trial, and are not otherwise obtainable by this Court at the trial through this Court's compulsory process.  Thus, the evidence so obtained will be used by the parties at the trial itself.  The evidence sought in British Columbia by this Letter Rogatory is necessary in order for this Court to do justice in this case.  Therefore, this Court respectfully requests that, in the interest of justice, you issue appropriate orders, subpoenas, or other compulsory process necessary to compel Ramic's attendance for an oral deposition and for the production of the documents described below concerning any issue relevant to the case before this Court.

This Court further requests that the proper judicial authorities of the Province of British Columbia cause: the deposition to be transcribed by a qualified court reporter; the transcript of the deposition to be authenticated; and the authenticated records to be delivered to Plaintiff's and Defendants' counsel.  It is also requested that the parties be granted the option to have the testimony videotaped by a qualified videographer.  The original transcript of the testimony, and if the testimony is videotaped, the videotapes, should be returned to the parties for retention and production at the time of trial.

Pursuant to 28 U.S.C. § 1782, this Court stands ready to extend similar assistance to the Courts of Canada in like cases.

## WITNESS AND DOCUMENTS REQUESTED

### III.  Definitions And Instructions

#### A.  Instructions

This request calls for the production of documents in the possession, custody, or control of the witness.

#### B.  Definitions

1.  "Document" includes all written, typed, recorded, or graphic matter, however produced or reproduced, of any kind or description, including originals, non-identical copies and drafts, and all other materials discoverable under Federal Rules of Civil Procedure 26.  This definition also includes papers, books, letters, correspondence, e-mails, instant messages, faxes, contracts, agreements, notes, memoranda, inter-office communications, messages, notices, transcripts, meeting minutes, reports, analyses, investigations, recommendations, instructions, opinions, summaries, charts, computer printouts, statements, transcripts, receipts, account statements, evaluations, business records, accounting records, financial statements, billing records, tax records, tax returns, ledgers, invoices, drafts, desk calendars, appointment books, diaries, date books, organizers, journals, electronically stored information, computer disks or tapes, computer input or output, files, filings, folders, lists, schedules, and all communicative materials of any kind (to include data stored in a computer or other electronic device, data stored on removable magnetic or optical media, backup copies of data, digitized pictures and video, digitized audio, and voicemail).

2.  The term "communication" means any written, oral or mechanical transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether formal or informal,

including email or other computerized mail, text messages, instant messages, Bloomberg messages, correspondence, memoranda, notes, facsimiles, diaries, telephone conversations (whether in recorded form or otherwise), in-person meetings, Documents or files in computer format, and any written Documents concerning any such communications.

3. The term "concerning" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, constituting, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

4. The terms "including," "include," or "includes" are used in their broadest sense and are not meant to be limiting. Any list following these terms contains illustrative examples of the types of documents responsive to the request, but the list is without limitation and does not constitute an exclusive, all-encompassing, or exhaustive listing of every type of document responsive to the request.

5. The words "and" "or," and "any" are intended to be construed as necessary to bring within the scope of these requests for production any documents or information that otherwise might be construed to be outside the scope of these requests. Use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun. The use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of this Letter Rogatory

documents or information that might otherwise be construed to be outside the scope of this Letter Rogatory.

6.  "Person" means natural persons, governments or agencies thereof, quasi-public entities, corporations, associations, partnerships, ventures, and any other form of organization. Whenever reference is made to a person, it includes any and all of such person's employees, agents, attorneys, consultants, other representatives, or others acting on that person's behalf.

## IV. Witness And Documents

### A. Third Party Witness Ramic

Almir Ramic
Igman Consulting, Suite #346,
151-32500 South Fraser Way,
Abbotsford, BC V2T 4W1

    -and-

35347 McKinley Drive
Abbotsford, BC V3G3E2

c/o Sean K. Boyle, Esq.
Blake, Cassels & Graydon LLP
595 Burrard Street, P.O. Box 49314
Suite 2600, Three Bentall Centre
Vancouver BC V7X 1L3 Canada

Ramic provided informational technology services to Fraser and Contrarian Press during at least one of the stock promotions alleged in the Commission's Amended Complaint. Ramic was responsible for administering Contrarian Press e-mail addresses, including, at Fraser's direction, the mz@contrarianpress.com email address that Yeung used to communicate with stock promoters. Ramic also helped create EMPO promotional material and registered the website that Yeung provided to the stock promoters that he hired, and from which the stock promoters accessed and downloaded the EMPO promotions that they distributed to prospective

investors. In December 2012, a company associated with Cheung paid Ramic $1700 with a memo reading "Payment of 1700 USD to Ramic IR on EMPO."

Ramic would have knowledge of relevant facts concerning Fraser's and Contrarian Press's involvement in EMPO promotional campaigns, including but not limited to, their roles in creating EMPO promotional material, their hiring of Yeung, and their knowledge of Cheung's financing of the campaign.

<u>Documents Requested from Ramic</u>

All Communications or Documents concerning EMPO, including but not limited to the following topics:

(1) All Communications or Documents relating to the issuance or administration of the e-mail address mz@contrarianpress.com;

(2) All Communications or Documents concerning any Defendant and EMPO;

(3) All Communications or Documents relating to Yeung (a/k/a Mason Zhang); and

(4) All Documents and Communications relating to Cheung, or companies associated with Cheung, including but not limited to, New Kaiser Limited and Alpine View SA.

_____
Vernon S. Broderick
United States District Judge

DATE: September 17, 2019

8