

Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
vedderprice.com

April 27, 2020

Michael Quinn
Shareholder
+1 424 204 7734
mquinn@vedderprice.com

**VIA ECF**

The Honorable Vernon S. Broderick
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

Re: <u>SEC v. Contrarian Press, LLC, et al., 16-CV-06964</u>

Dear Judge Broderick:

The undersigned counsel represent defendants Contrarian Press, LLC ("Contrarian Press") and Scott S. Fraser ("Fraser") (collectively, "Defendants") and plaintiff United States Securities and Exchange Commission ("SEC," "Commission" or "Plaintiff" and, together with Defendants, the "Parties"). The Parties submit this letter jointly, pursuant to Rule No. 3 of Your Honor's Individual Rules & Practices in Civil Cases, regarding a discovery dispute they have been unable to resolve on their own.

The present dispute involves the SEC's request to depose lead counsel for Defendants, Michael Quinn. Defendants object to the SEC's request on various grounds (set forth below) and intend to move to quash any subpoena the SEC may issue in connection therewith on those bases.

The parties have met their obligations under Fed. R. Civ. P. 37(a)(1) to meet and confer regarding these issues through their e-mail correspondence dated March 20 and April 14, 2020, as well conference calls on March 24 and April 2, 2020 involving Tejal Shah and Victor Suthammanont for the SEC and Michael Quinn, Joshua Dunn and Kevin Asfour for Defendants.

<u>Defendants' Position</u>:

The SEC is seeking to depose lead counsel for Defendants, Michael Quinn. The SEC does not assert that Mr. Quinn has any knowledge regarding any of the three promotional campaigns that are at the heart of the SEC's Complaint but rather that he may have knowledge of negotiations that took place between *nonparty* Empowered Products, Inc. ("EMPO") and *nonparty* New Kaiser, Ltd. ("NK"), which invested in EMPO around the time that EMPO became a public company in June 2011. The SEC asserts that NK may be linked to yet another *nonparty*, monikered "Associate 1" in the Complaint,[1] who the SEC seems to believe may have interreacted with yet other *nonparties* to help finance or facilitate the Second and Third Promotional Campaigns alleged in the Complaint in May 2012 and October 2012, respectively.

For all of the same reasons Defendants articulated in their portion of the joint letter (DE 111) concerning the SEC's subpoena to K&L Gates, co-counsel for Defendants in this case (and where Mr. Quinn was

---

[1] The SEC adds a gratuitous footnote that Associate 1 settled an unrelated SEC matter three years ago in the hope that the Court will look less favorably upon Defendants because the SEC claims they were somehow connected to each other. Neither Defendant nor EMPO was at all involved in Associate 1's SEC matter, which was settled without admitting or denying liability and specifically cautions: *The findings herein are made pursuant to Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding*. https://www.sec.gov/litigation/admin/2017/33-10397.pdf , at p. 2, fn 1.

1925 Century Park East, Suite 1900  |  Los Angeles, California 90067  |  T +1 424 204 7700  |  F +1 424 204 7702

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, and Vedder Price Pte. Ltd., which operates in Singapore.

The Honorable Vernon S. Broderick
April 27, 2020
Page 2

formerly employed), nothing that the SEC seeks here is at all relevant to the claims alleged. The connections that the SEC hopes to establish are so remote as to be absurd and even if confirmed, would not make it any more likely that Defendant Fraser or his company Defendant Contrarian Press "directed," "arranged," and/or "managed" the May and October 2012 promotional campaigns as alleged in the Complaint. For that reason alone, the SEC's request for Mr. Quinn's deposition should be quashed.

But further, the SEC's only purported basis for believing that Mr. Quinn even has the irrelevant information that it seeks is its distorted representation of Mr. Fraser's investigative testimony five years ago in April 2015. In its portion of the joint letter at DE 111, the SEC quotes Mr. Fraser's testimony as follows: "*Q: So it's fair to say that your best recollection is that if you didn't do it, it was your attorneys who brought New Kaiser to the table? [Fraser]: Yes, I know I didn't do it.*" That is also the only testimony the SEC has directed Defendants to in support of the need for Mr. Quinn's deposition. The SEC cherry-picked this one question and answer from a series of questions and answers on the subject that, when viewed as a whole, make it clear Mr. Fraser did not know who brought NK to the table and that he did not say that his attorneys did. In fact, Mr. Fraser no less than *three times* testified that he did not know who brought NK to the table and the SEC *three times* tried to get Mr. Fraser to say that it was attorneys. Indeed, the final time Mr. Fraser testified that he was unaware was *after* the question and answer cited by the SEC.

<u>Fraser says he doesn't know the first time</u> [*see* transcript of April 9, 2015 investigative testimony of Scott Fraser ("Fraser Tr."), at 172:17-25]

Q What is New Kaiser Limited? A I don't know.
Q How did you get introduced to them?
A That was -- that occurred during the merger, at some point. . . . **But as far as where it came from, I don't know**.

<u>The SEC suggests it was attorneys for the first time and Mr. Fraser says he doesn't know a second time</u> [*see id.* at 173:1-7]

Q Well, who arranged this?
A It was arranged during the time of the -- when the attorneys were working on the reverse merger.
Q So is it your testimony that the attorneys arranged for the $2 million to come in from New Kaiser?
A **I'm not sure who exactly arranged for it**, but it was done during the process.

<u>The SEC suggests it was attorneys a second time and Mr. Fraser says he doesn't know a third time</u> [*see id.* at 173:22-25]

Q Other than you and your attorneys, who could have brought New Kaiser to the table?
A **I don't know**.

<u>The SEC suggests it was attorneys a third time and Mr. Fraser ambiguously says yes and that he doesn't know a fourth time</u> [*see id.* at 174:4-7]

Q So it's fair to say that your best recollection is that, if you didn't do it, it was your attorneys who brought New Kaiser Limited to the table?
A Yes, **I know I didn't do it**.

<u>Mr. Fraser says he doesn't know a fifth time</u> [*see id.* at 174:8-12]

Q Okay, and you're unaware of anyone else who could have done it?
A **Who could have brought New Kaiser?**
Q Yes.
A **Yes, I'm unaware**

The Honorable Vernon S. Broderick
April 27, 2020
Page 3

These excerpts make clear it was the SEC, and not Mr. Fraser, who persisted in suggesting that the attorneys "brought NK to the table." Mr. Fraser repeatedly testified he didn't know and was repeatedly pressured to say it could have been his attorneys. Yet in arguing for the need for discovery from the attorneys, the SEC cited this Court only to the one question and its ambiguous answer that started with "yes" and did not make the Court aware of any of the other testimony that was plainly contradictory to that "yes." It is a bit ironic that this lawsuit alleges that *Defendants* engaged in fraud by violating Rule 10b-5, which makes it unlawful to "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

Finally, this testimony was from *five* years ago and the SEC cannot identify any recent events that cause the need to seek this information *now* at the close of fact discovery, or that could justify disrupting Defendants' preparation of their case to have their lead attorney deposed.

Courts recognize that deposing opposing counsel "disrupts the adversarial system," "lowers the standard of the profession," "detracts from the quality of client representation," and may have a "chilling effect" on "truthful communications from the client to the attorney." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Given these concerns, the Second Circuit "disfavors" deposing opposing counsel and requires courts to weigh several factors before allowing such depositions to proceed, including: (i) "the need to depose the lawyer," (ii) "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation," (iii) "the risk of encountering privilege and work-product issues," and (iv) "the extent of discovery already conducted." *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Subpoena Issued to Dennis Friedman)*, 350 F.3d 65, 71-72 (2nd Cir. 2003).

Here, all of these factors weigh against allowing the deposition to proceed. First, to the extent that the SEC may claim a need for the deposition, that need was manufactured by the SEC's own misleading suggestions during Mr. Fraser's investigative testimony. Second, to the extent that the SEC suggests Mr. Quinn may have played a role in connecting two nonparties, that role is purely speculative and is unrelated to the claims in the pending litigation. Third, there is significant risk of interceding into privilege and work-product issues. Fourth, the SEC had nearly five years to conduct discovery on this issue but declined to do so until now—the eve of closing discovery.

Plaintiff's Position:

While the depositions of opposing counsel are disfavored, courts in the Second Circuit applying the *Friedman* factors, *see* 350 F.3d 65 at 72, follow its admonition to "take a flexible approach" and allow the depositions of counsel, including opposing counsel, where they have first-hand knowledge of facts that are relevant to the claims in the current suit. *See, e.g.*, *In re Chevron Corp.*, 749 F. Supp.2d 141, 162-65 (S.D.N.Y. 2010) (allowing deposition of attorney); *Johnson v. City of New York*, No. 16 Civ. 6426, 2018 WL 6727329 (E.D.N.Y. Dec. 21, 2018) (permitting written deposition of opposing counsel); *McCutcheon v. Colgate-Palmolive Co.*, No. 16 Civ. 4170, 2018 WL 5818255 (S.D.N.Y. Aug. 3, 2018) (permitting deposition of lawyers, including opposing counsel). For the reasons below, the *Friedman* factors support the deposition of Mr. Quinn, and the motion to quash should be denied.

The Commission's Amended Complaint alleges that Defendants violated federal securities laws in conducting three promotions of EMPO stock. (DE 62.) Among the conduct alleged was that Defendant Fraser, EMPO's CEO, did not disclose his involvement in promoting EMPO's stock and arranged for third parties to manage the campaigns and concealed the source of funds for the promotional campaigns. (Am. Compl. ¶¶ 44-59; 73-79). The SEC alleged that entities connected with Associate 1[2] wired funds to

---

[2] Associate 1 is Joe Yiu Cheung (a/k/a Dylon de lu Zhang), who, without admitting or denying the Commission's findings, settled fraud and other claims by the Commission related to Mr. Cheung's funding false and misleading

pay for the Second Promotion (*id*. at ¶¶ 50-55) and the Third Promotion. (*Id*. at ¶¶ 76-79.) The facts surrounding how EMPO became publicly traded—essentially through $1.5 million in funding from Associate 1 funneled through New Kaiser—are necessary background to these allegations and relevant to understanding Fraser's scienter in concealing Associate 1's involvement. (*Id*. at ¶¶ 24-28.)

Mr. Quinn was indisputably involved in the EMPO/New Kaiser transaction—he was EMPO's primary attorney. (DE 111 ("[K&L Gates] represented EMPO . . . in connection with the June 2011 merger transaction.").) A legal assistant at K&L Gates provided instructions to EMPO's transfer agent regarding where New Kaiser's shares should be sent and copied Mr. Quinn on the email. As set forth above and in the March 20, 2020 Joint Letter (DE 111), the relationship between New Kaiser, Associate 1, EMPO, and Fraser is relevant to establishing Fraser's scienter and role in funding the promotional campaigns. Therefore, "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation" supports the deposition of Mr. Quinn. *See Friedman*, 350 F.3d 65 at 72.

There is also a need for Mr. Quinn's deposition. *Id*. As Defendants illustrate above, during his investigative testimony, Fraser implausibly maintained that he did not know how he came to be introduced to New Kaiser, which entered into a Subscription Agreement with Fraser's company EMPO in which it paid $2 million to EMPO in exchange for 2 million shares, before which EMPO had less than $100,000 in its bank accounts. After repeated probing from the SEC staff, Fraser admitted that it may have been his attorneys at K&L Gates (who include Mr. Quinn), who introduced him to New Kaiser and he could not think of anyone else who did so. (Fraser Tr. at 174:4-12.) Moreover, documents produced during the investigation demonstrate that K&L Gates arranged for the transfer of stock certificates to an associate of Associate 1 in an email copying Mr. Quinn.

Discovery already taken establishes the need for Mr. Quinn's deposition. As discussed in the March 25, 2020 joint letter (DE 111 4-5), Plaintiff attempted other reasonable discovery to obtain information concerning the New Kaiser transaction *before* insisting on the deposition of Mr. Quinn.[3] But Defendants have provided no further information concerning the New Kaiser transaction in their document productions or responses to written discovery. For example, in response to interrogatories, Fraser claimed no representatives of EMPO or New Kaiser negotiated the subscription agreement.[4] Defendants also moved to quash the subpoena to K&L Gates for documents concerning the transaction. (DE 111.) While Plaintiffs have not deposed Fraser yet, there is no reason to believe that he will testify differently than he did during his investigative testimony or in his sworn discovery responses. Defendants and K&L Gates have rejected offers from the SEC for Defendants to provide the information in some other manner obviating the need for Mr. Quinn's deposition. For these reasons, the extent of discovery already conducted supports the deposition of Mr. Quinn. *See Johnson*, 2018 WL 6727329, *4 (noting extensive paper discovery in allowing deposition of attorney). Having worked on transactions directly relevant to the claims, and then as counsel in the investigation (including representing Fraser at the above testimony), and then acted as defense counsel in this proceeding where his client stone-walled discovery on the relevant issues, Mr. Quinn was well on notice that he could and would be deposed and it was not something he learned on "the eve of closing of discovery."[5]

---

promotional campaigns of another microcap issuer. *See In re Joe Yiu Cheung*, Release No. 33-10397, 34-81285, 2017 WL 3278145 (Aug. 2, 2017).
[3] Defendants provide no authority that discovery under the Federal Rules is unavailable to the SEC because it has administrative subpoena power prior to filing its litigations.
[4] These responses, despite Fraser's ability to inquire of his counsel *in this action* who was involved in the transaction reveals Defendants' efforts to conceal this information from Plaintiff.
[5] In fact, Plaintiff first alerted Mr. Quinn that his deposition may be necessary in early February 2020 after service of the final interrogatories and requests for admission. Plaintiff's counsel specifically noted that it would seek Mr. Quinn's deposition if it did not obtain the information through other means.

The final factor, the risk of encountering privilege and work-product issues, *Friedman*, 350 F.3d 65 at 72, does not support quashing the subpoena. First, the topics about which Plaintiff will inquire include queries about the identity of the parties to the transaction, communications with New Kaiser, the role of Defendant Fraser in the transaction, and the knowledge of Mr. Quinn and K&L Gates of the relationships of parties alleged in the Complaint—none of which are privileged.[6] Nor have Defendants identified what litigation was contemplated such that testimony concerning the merger transaction might include protected work product. *See* Fed. R. Civ. P. 26(b)(3) (protecting materials prepare "in anticipation of litigation or trial").

Defendants' argument that its basis for Mr. Quinn's deposition is "speculative" rings hollow. Mr. Quinn was counsel to EMPO in transactions relevant to the claims. Mr. Quinn and Defendants have failed in discovery requests and testimony to provide sufficient facts regarding the transactions. They cannot not now seek to shield discovery from their transaction attorney, who can provide relevant facts for regarding these transactions.

For the foregoing reasons, Defendants' motion to quash should be denied.

        Respectfully submitted,

        VEDDER PRICE P.C. / K&L GATES LLP

By:    */s/ Michael J. Quinn*
        Michael J. Quinn
        Joshua A. Dunn
        Vedder Price P.C.
        1633 Broadway, 31st Floor
        New York, NY 10019
        mquinn@vedderprice.com
        jdunn@vedderprice.com
        (212) 407-7700

        Kevin Asfour
        K&L Gates LLP
        10100 Santa Monica Blvd., 8th Floor
        Los Angeles, CA 90067
        kevin.asfour@klgates.com
        (310) 552-5016

        SECURITIES AND EXCHANGE COMMISSION

By:    */s/ Victor Suthammanont*
        Victor Suthammanont
        Tejal D. Shah
        Securities and Exchange Commission
        200 Vesey Street, Suite 400
        New York, New York 10281
        (212) 336-5674 (Suthammanont)
        suthammanontv@sec.gov

---

[6] These factual topics stand in stark contrast to the topics on which Defendants wish to depose the SEC' attorneys—i.e., the SEC attorneys' thought processes in responding to contention interrogatories and other written discovery—and highlight that Defendants' motion to quash should be denied while the SEC's motion for a protective order should be granted under the *Friedman* factors.