```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/2/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
SECURITIES AND EXCHANGE                                 :
COMMISSION,                                             :            16-cv-6964 (VSB)
                                                        :
                             Plaintiff,                 :
                                                        :                **ORDER**
             -against-                                  :
                                                        :
                                                        :
CONTRARIAN PRESS, et al.                                :
                             Defendants.                :
                                                        :
------------------------------------------------------- X

<u>VERNON S. BRODERICK, United States District Judge</u>:

  Before me are two separate objections to various discovery related rulings of Magistrate Judge Debra Freeman.  *First*, Defendants object to Magistrate Judge Freeman's order granting Plaintiff Securities and Exchange Commission's (the "SEC") request for a protective order barring a deposition by Defendants of an SEC representative designated under Federal Rule of Civil Procedure 30(b)(6).  (Doc. 125.)  *Second*, Defendants object to Magistrate Judge Freeman's order permitting Plaintiff to serve a modified subpoena on K&L Gates LLP ("KLG"), which serves as Defendants' counsel of record in this litigation.  (Doc. 138.)

  Because Magistrate Judge Freeman's discovery orders are neither clearly erroneous nor contrary to law, the discovery objections are OVERRULED.

  **I.**  <u>**Discovery Orders**</u>

    **A.** *Standard of Review*

  A magistrate judge's discovery orders are generally considered "nondispositive" of the litigation.  *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).  Accordingly, a district court must affirm such orders unless they are "clearly erroneous or

contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Progress Bulk Carriers v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 2 F. Supp. 3d 499, 502 (S.D.N.Y. 2014) ("Even where parties file timely objections, district courts only set aside parts of the order that are clearly erroneous or contrary to law."). "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Dem. Rep.*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (internal citations and quotation marks omitted). This standard of review is "highly deferential," *see id*. at 511, and "magistrates are afforded broad discretion in resolving discovery disputes," *see MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Secs. Inc.*, No. 12 Civ. 7322, 2013 WL 6840282, at * 1 (S.D.N.Y. Dec. 27, 2013) (citation omitted). Additionally, "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge," *Thai Lao Lignite Co.*, 924 F. Supp. 2d at 512, and "[n]ew arguments and factual assertions cannot properly be raised for the first time in objections to [a magistrate's discovery order], and indeed may not be deemed objections at all," *Khatabi v. Bonura*, No. 10 CIV. 1168 (ER), 2017 WL 10621191, at *5 (S.D.N.Y. Apr. 21, 2017) (citation omitted) (collecting cases). *See also Creighton v. City of New York*, No. 12 CIV. 7454 (PGG), 2015 WL 8492754, at *5 (S.D.N.Y. Dec. 9, 2015) ("Although a district court has the inherent authority to consider further evidence in reviewing rulings on nondispositive matters, such discretion should rarely be exercised in this context, because the district court functionally operates as an appellate tribunal under Rule 72(a) . . . .") (internal quotation marks omitted).

B. *Discussion*

**1. The SEC's Protective Order**

First, I address Plaintiff's request for a protective order to prevent a Rule 30(b)(6) deposition of an SEC representative. (*See* Doc. 116.) Any party "from whom discovery is sought may move for a protective order" from a court, provided that the parties meet and confer in good faith in an effort to resolve the issue beforehand. Fed. R. Civ. P. 26(c)(1). Rule 26(c)(1) provides that a court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.*

Here, Defendants' Rule 30(b)(6) notice identifies nine topics and thirty-four sub-topics for the deposition, which principally concern Plaintiff's evidence and the facts at issue in this case. (*See* Doc. 116-1.) Plaintiff contends that a Rule 30(b)(6) deposition of an SEC representative "would be annoying, oppressive, and unduly burdensome under Rule 26(c) and . . . would encroach on information protected by the work-product doctrine and attorney-client privilege." (Doc. 116 at 1.)

On June 17, 2020, Magistrate Judge Freeman granted Plaintiff's protective order precluding a 30(b)(6) deposition. (Doc. 125.) In her order, Magistrate Judge Freeman determined that "the developed body of law within this Circuit . . . supports the SEC's position regarding the impropriety of the type of deposition that Defendants seek." (*Id.* at 3.) The order suggested that a deposition was particularly unwarranted here, where Defendants could obtain the information sought "by means less likely to intrude on attorney-client and work-product protections." (*Id.* at 4.) At the same time, to address certain of the discovery concerns raised by Defendants, Magistrate Judge Freeman ordered the SEC to 1) amend and complete its interrogatory responses for those allegations that they have denied in part "to specify the portions

3

of the requests that are admitted"; 2) revisit and potentially revise its responses to contention interrogatories and to identify with specificity the witnesses or documents that support particular factual contentions; and 3) supplement its Rule 26(a)(1)(A)(i) disclosures. (*Id.*) Finally, Magistrate Judge Freeman's order requires the SEC "to conduct a reasonable search" for all documents from a separate but related investigation, the files from which the SEC conceded it had not searched in responding to discovery requests in the instant case, in an effort to ensure that SEC investigators did not simply "cherry pick[]" which documents it examined and produced to Defendants from that investigation. (*Id.* at 4–5.) On July 2, 2020, Defendants filed their Rule 72 objections to Magistrate Judge Freeman's decision to grant a protective order, along with a declaration and exhibits. (Docs. 130–31.) Plaintiff submitted its response on July 8, 2020, along with several exhibits. (Doc. 134.)

      I agree with Magistrate Judge Freeman that the precedent in this Circuit cautions against granting a Rule 30(b)(6) deposition under the circumstances presented in this case. A Rule 30(b)(6) deposition is typically considered as "'binding' in the sense that whatever its deponent says can be used against the organization." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015). In Rule 30(b)(6) depositions, "[t]he persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Defendants' proposed deposition topics contained in their notice are atypical for a Rule 30(b)(6) deposition insofar as they do not seek general information about the SEC and its organizational practices and instead relate to specific facts and evidence the SEC has in its possession to prove its claims in this litigation. The topics chiefly ask the deponent to identify "[t]he facts and evidence supporting . . . specific contentions in PLAINTIFF's Amended Complaint"—indeed, Defendants ask for "the facts and evidence that support" many different claims mentioned in

4

Plaintiff's Amended Complaint and ask that Plaintiff identify individuals listed in the Amended Complaint. (Doc. 116-1 at 8–10.) In this way, the deposition topics resemble requests for admission. (*See generally* Doc. 126 at 23:17-19) ("you're not entitled to have the SEC admit that they cannot prove a case.").

In other words, Defendants seek a Rule 30(b)(6) deposition to probe specific information directly related to Plaintiff's investigation and the case at issue. Consequently, this particular deposition "constitutes an impermissible attempt by [Defendants] to inquire into the mental processes and strategies of the SEC" and seems "intended to ascertain how the SEC intends to marshal the facts, documents and testimony in its possession, and to discover the inferences that plaintiff believes properly can be drawn from the evidence it has accumulated." *SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992). If, as Plaintiff claims, "*all of the officers*" who might sit for a 30(b)(6) deposition "were attorneys or investigators acting at the direction of attorneys in anticipation of litigation," (Doc. 134 at 5), the deposition comes close to "an attempt to depose the attorney for the other side," *SEC v. Rosenfeld*, No. 97 Civ. 1467, 1997 WL 576021, at *2 (S.D.N.Y. 1997). Even if Plaintiff is incorrect and the SEC could designate an officer who was not involved in this matter, because "the notice of deposition clearly calls for the revealing of information gathered by the SEC attorneys in anticipation of bringing the instant enforcement proceedings," any witness who the SEC designates "would have to have been prepared by those who conducted the investigation" since they have the relevant knowledge. *Id.* Because Defendants' Rule 30(b)(6) deposition topics are so closely tied to the specific evidence at issue in this litigation, the deposition risks revealing attorney work product or infringing on attorney-client privilege and thereby prejudicing Plaintiff no matter what individual the SEC designates for the deposition.

Of course, Defendants are "not precluded from all inquiry into the contentions of the SEC," *Morelli*, 143 F.R.D. at 48, and the parties have already engaged in written discovery. Defendants claim that "the Magistrate's Order's conclusion that Defendants have not shown that the factual information they seek cannot be obtained by means less likely to intrude on attorney-client and work-product protections" is "incorrect," in large part because they allege that the SEC's interrogatory responses were "evasive and inadequate." (Doc. 130 at 6.) To the extent this is true, the Magistrate's order addresses this issue squarely by directing Plaintiff to supplement its interrogatory responses to ensure "that Defendants may have a clearer understanding of the bases of the SEC's factual contentions." (Doc. 125 at 4.)

Defendants argue that this remedy "is inadequate to address Defendants' concerns because any such supplemental responses will inevitably come after the close of discovery and, therefore, Defendants will not have any recourse if the supplemental responses continue to be inadequate." (Doc. 130 at 9.) This argument is a red herring, because a Rule 30(b)(6) deposition would not alleviate this problem, since a designated SEC representative could provide "evasive or inadequate answers" in the Rule 30(b)(6) deposition just as easily as the SEC could in written discovery. (*Id.* at 6.) Instead, if Defendants, upon reviewing Plaintiff's supplemental responses, believe in good faith that the SEC's updated written discovery fails to properly address the problem, I will grant Defendants leave to file a motion to reopen discovery.[1] As such, I believe that Magistrate Judge Freeman's order is sufficient to ensure that Plaintiff correct any deficiencies in its written discovery and provide Defendants with complete and adequate materials.

---

[1] My granting Defendants permission to request the reopening of discovery should not be viewed as a ruling on the substance of such a motion.

6

### 2. Subpoena to KLG

The second issue before me concerns Plaintiff's request to subpoena KLG for documents. (*See* Doc. 138.)   Plaintiff alleges that Empowered Products, Inc. ("EMPO"), an entity where Defendant Scott S. Fraser ("Fraser") serves as President and Chairman, entered into a subscription agreement with New Kaiser, Ltd. ("New Kaiser"). (Doc. 141 at 1–2.) Plaintiff claims that Defendants' counsel in this matter represented EMPO in this transaction. (*Id.*) Plaintiff also alleges that Joe Cheung ("Cheung"), as part of this subscription agreement, provided the funds to facilitate a sale of shares between EMPO and New Kaiser, and that he funded two of the promotional campaigns referenced in the Complaint. (*Id.* at 2.) Plaintiff initially submitted a subpoena to KLG for documents for, among other things, all communications concerning Defendants, EMPO, and/or On Time Filings, Inc.,[2] between KLG and any of twenty-three separate individuals or entities. (Doc. 111-1 at 6–7.) One of those twenty-three individuals or entities was Cheung. (*Id.* at 7.) During a conference between the parties and Magistrate Judge Freeman, Plaintiff confirmed that the information it sought from this subpoena concerned only the connections and communications between Cheung, Fraser, and New Kaiser. (Doc. 126 at 64:10-65:2, 68:12-69:5.) During this conference, Magistrate Judge Freeman found the subpoena overly broad and instructed Plaintiff, if it still wished to subpoena KLG, to meet and confer with Defendants in an effort to try to agree to a more narrowly tailored subpoena. (*Id.* at 75:1-77:16).

Plaintiffs' modified subpoena asked for five categories of documents or communications that more directly concerned Cheung, Fraser, New Kaiser, and the subscription agreement. (Doc. 132-2 at 5–6.) Defendants objected to the revised subpoena. (Doc. 132 at 4–7.) On July

---

[2] Plaintiff puts forth that EMPO entered into a merger agreement with On Time Filings, Inc., in June 2011.  (Doc. 111 at 2.)  KLG represented EMPO in that transaction.  (*Id.*)

7

27, 2020, Magistrate Judge Freeman granted permission to Plaintiff to serve its modified subpoena, provided that it strike Request 2 and modify Request 4 to cover only those communications or documents within a six-month timeframe.  (Doc. 138.)  The order also directed KLG to provide a privilege log, "which may be categorical."  (*Id.*)

Defendants filed Rule 72 objections to that order on August 10, 2020, along with an affidavit and exhibits.  (Doc. 139.)  Plaintiff filed a response to those objections on August 13, 2020, accompanied by several exhibits.  (Doc. 141.)  Defendants filed a reply brief in support of their Rule 72 objections on August 21, 2020.  (Doc. 143.)

While seeking "discovery from opposing counsel is disfavored," *In re Chevron Corp.*, 749 F. Supp. 2d 141, 159 (S.D.N.Y. 2010), it is not prohibited.  The Second Circuit has rejected a categorical ban and instead has adopted a "flexible approach" when assessing discovery served on opposing counsel.  *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71–72 (2d Cir. 2003).  Factors considered by courts when assessing subpoenas directed to opposing counsel "may include" 1) "the need to depose the lawyer," 2) "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation," 3) "the risk of encountering privilege and work-product issues," and 4) "the extent of discovery already conducted."  *Id.* at 72.

Although the analysis under the factors outlined in *Friedman* is close, I find that Magistrate Judge Freeman's decision to grant the modified subpoena with revisions was neither clearly erroneous nor contrary to law.[3]

---

[3] I note that *Friedman* dealt with a subpoena to depose opposing counsel, rather than a subpoena for documents.  350 F.3d at 67–68.  Although the legal standard for evaluating subpoenas for documents served on opposing counsel is not well developed in this Circuit, courts have at times appeared to draw a distinction between subpoenas served on opposing counsel for depositions and subpoenas served on opposing counsel for documents.  *See, e.g.*, *NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 17-cv-8943 (CS), 2019 U.S. Dist. LEXIS 14981, at *4–9 (S.D.N.Y. Jan. 28, 2019); *Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ.2068(ALC)(JFC), 2014 WL 904483, at *1–4 (S.D.N.Y. Mar. 4, 2014).  Here, however, I need not engage in an analysis of these distinctions

8

a.     Need to Subpoena KLG

The keystone to determining the need to subpoena opposing counsel is whether the information "sought . . . may be obtained from another source." *See KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, No. 19-cv-2918, 2020 WL 1989487, at *4 (S.D.N.Y. Apr. 12, 2020). "Where the information sought from the attorney can be provided by non-attorney witnesses, that weighs against permitting the deposition of an attorney." *Doe v. Town of Greenwich*, No. 3:18-CV-01322 (KAD), 2020 WL 2374867, at *5 (D. Vt. Jan. 10, 2020).

Here, Plaintiff has already attempted to obtain the information from Fraser and EMPO, and through interrogatories during discovery; however, none of these attempts have produced the information Plaintiff seeks. (Doc. 141 at 6.)  Fraser has denied having a meaningful professional relationship with Cheung. (Doc. 139-3.)  Plaintiff represents that it is unable to locate Cheung, with whom it last had contact in 2017 through a settlement in a separate case. (Doc. 141 at 8); *see also* (Doc. 141-6); (Doc. 126 at 58:13-25) (stating that Plaintiff has tried to locate Cheung but does not know where he lives now or how to contact him).  Defendants note that the SEC was in contact with Cheung as of August 2017, while this case was already underway. (Doc. 139 at 5.)  Yet, Defendants provide no evidence to refute the fact that Plaintiff cannot locate Cheung at this point three years later—which Plaintiff has put forth in sworn testimony and in its briefing.  Plaintiff makes a convincing case that it has exhausted other options and cannot obtain the information about Cheung, Fraser, and New Kaiser from another source.  Plaintiff has thus demonstrated sufficient need for the discovery.

b.     KLG's Role in the Two Proceedings

"The rationale for limiting depositions of attorneys . . . is that depositions of counsel,

---

because the parties agree that *Friedman* should govern this issue. (Doc. 139, at 4; Doc. 141, at 6.)  Therefore, I apply the *Friedman* factors, acknowledging that, if anything, these factors are less favorable to Plaintiff, which seeks a subpoena from opposing counsel for documents and not for a deposition.

9

even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97CV06124(JGK)(THK), 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000) (citations omitted).  In assessing the second *Friedman* factor, I must determine KLG's role in both this proceeding and the matter on which discovery is sought.  KLG's role in the pending litigation is as Defendants' trial counsel.  *See KOS Bldg. Grp., LLC*, 2020 WL 1989487, at *5 (determining where attorney is acting as a party's lawyer "weighs against allowing the discovery").  KLG also served as counsel representing EMPO—the entity where Fraser serves as President and Chairman—during the pre-litigation transaction at issue.  Given KLG's central role in both matters, this factor clearly weighs in favor of Defendants.

          c.      <u>Risk of Encountering Privilege and Work-Product Issues</u>

Closely related to the second factor is "the risk that proceeding with the deposition of adverse counsel would encounter privilege and work-product issues." *In re Chevron Corp.*, 749 F. Supp. at 164.  Because "every [*Friedman*] case entails at least some risk of encountering such issues," analyzing this factor requires "a sensitive consideration of the extent to which substantial privilege issues are raised." *Id.*  While KLG played a central role in this case and in the proceeding for which discovery is sought, I believe that there are proper procedures in place to prevent disclosure of protected material.  *First*, Plaintiff made clear that it is "not seeking privileged communications," (Doc. 126 at 61:12-13), and is only seeking non-privileged information about "who was representing New Kaiser," whether Cheung was "included in communications with New Kaiser," and whether Fraser was included "in communications between Cheung and New Kaiser," (*id.* at 68:12-69:5).  *Second*, Plaintiff in its amended subpoena has narrowed its focus to center exclusively on these non-privileged communications.

10

(*See* Doc. 132-2.) *Third*, Magistrate Judge Freeman's order requiring a privilege log ensures that Defendants will not be required to turn over any information that is privileged or confidential. (*See* Doc. 138.) I further direct the parties to meet and confer to enter into a protective order that creates a process for dealing with privileged materials, including processes for recovering any privileged material inadvertently produced and for addressing privilege log challenges. With these procedures in place, I find that the risk of encountering privilege or work-product issues is relatively low.

### d. Extent of Discovery Already Conducted

Courts are often less likely to grant discovery against opposing counsel where the parties have already engaged in significant discovery. *See KOS Bldg. Grp., LLC*, 2020 WL 1989487, at *6 (determining that "[t]he late stage of discovery" worked against the moving party's favor); *Resqnet.Com, Inc. v. Lansa, Inc*., No. 01Civ.3578(RWS), 2004 WL 1627170, at *6 (S.D.N.Y. July 21, 2004). Here, the parties have indeed engaged in significant discovery. However, as mentioned above, Plaintiff has explored other options for obtaining this information, by attempting to Cheung. Nevertheless, this factor weighs in favor of Defendants.

I believe the analysis of the *Friedman* factors is a close call. Serving discovery on opposing counsel is disfavored for good reason, especially where, as here, the opposing counsel has played a major role in both proceedings and significant discovery has taken place. However, I find that Plaintiff has a significant need for the discovery and that the risk of disclosure of confidential or protected materials is low. As such, I cannot find that Magistrate Judge Freeman's order granting this limited subpoena was clearly erroneous or contrary to law.

## II.      Conclusion

For the foregoing reasons, Defendants' discovery objections are OVERRULED. The

parties are directed to meet and confer about entering into a protective order that outlines a protocol for dealing with privileged materials, including processes for recovering any privileged material inadvertently produced and for addressing privilege log challenges.  The Clerk of Court is directed to terminate the open objections at Documents 130 and 139.

SO ORDERED.

Dated: December 2, 2020
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge